IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Brenda Mills, ) | |
| ) | C/A No. 5:11-0741-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Michael J. Astrue, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

I. <u>PROCEDURAL HISTORY</u>

    Plaintiff Brenda Mills alleges that she has been disabled since March 1, 2007, because of back pain and anxiety. Plaintiff protectively filed an application for a period of disability and disability insurance benefits on April 8, 2009. Plaintiff also protectively filed an application for supplemental security income on April 8, 2009. Her applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a video hearing on January 27, 2010. On April 16, 2010, the ALJ issued a decision that Plaintiff was not disabled under sections 216(i), 223, and 1614(a)(3)(A) of the Act. On January 28, 2011, the ALJ's decision became the "final decision" of the Commissioner after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for a Report and Recommendation. On April 17, 2012, the Magistrate Judge filed a Report and Recommendation in which she recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on May 4, 2012, to which the Commissioner filed a reply on May 21, 2012.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the

administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. DISCUSSION

A.  Factual Background

Plaintiff was fifty years old at the time of her claimed disability. She has past relevant work as a janitor. She has a limited education and is able to communicate in English. Her relevant medical history is as follows.

Plaintiff presented to the Emergency Room at Mary Black Memorial Hospital on April 8, 2009 complaining of anxiety and pain. Plaintiff stated that her body hurt all over. Tr. at 177. Plaintiff stated that she felt nervous, cried for no reason, and picked at her nails constantly. Tr. 172. Plaintiff stated that she experienced anxiety off and on for years but that it had been worse the previous few weeks. Id. at 175. Plaintiff was prescribed Ativan and instructed to follow up with Mental Health Spartanburg Regenesis. *Id.* at 176.

On April 9, 2009, Plaintiff presented to the Spartanburg Area Mental Health Clinic (SAMHC) for a mental status screening/triage. Plaintiff reported that she had been prescribed Lorgepan at the Spartanburg Regional Medical Center and had been sent to SAMHC to obtain a

prescription at no cost. Plaintiff was informed that SAMHC policy was to not prescribe narcotics for new patients. Tr. 180-81.

Plaintiff presented to Mary Black Health System Diagnostic Center on May 31, 2009 complaining of diarrhea. It was noted that Plaintiff had been feeling depressed because her son was in jail, anxious, and had lost her appetite. Plaintiff was prescribed Nitrofurantoin 100 mg, Buspirone 10 mg, and instructed to follow up with Mental Health Spartanburg Regenesis. Plaintiff was discharged home. Her gait was upright and steady. Tr. 254-61.

Plaintiff was examined on June 24, 2009 by James N. Ruffing, Psy.D. after being referred by the Disability Office. Plaintiff reported that she was unable to work because she became nervous, she had difficulty being around groups of people, and she picked at her fingers. Plaintiff reported working a Startex Mills. Plaintiff also reported working at Charles Lee Center caring for adults. She reported her last employment was at National Starch/Diverco, but she had to quit working because of lack of transportation and moving. Plaintiff reported receiving a ninth grade education. She had been married and divorced three times. Plaintiff stated that she lived with a boyfriend. She would clean the house sometimes but then her nerves would get bad and she would have to sit down. She would go into her own room when people came to visit. She reported having limited reading skills. She reported taking BuSpar. Plaintiff stated that she could care for her personal needs. She seldom drove because she would get nervous. Plaintiff reported that she attended church typically twice a week. She could go to the store and purchase items using an AVT card or cash. Plaintiff stated that she had no friends to socialize with. She smoked two packs of cigarettes a day. She reported prior substance and alcohol abuse but stated that she had stopped of her own accord approximately a year and a half earlier. Dr. Ruffing noted normal cognitive processing speed and grossly intact memory

functioning. Dr. Ruffing's impression was that Plaintiff's symptomatology appeared mild and seemed somewhat unusual as she would not have developed any anxiety symptoms until age 51. Dr. Ruffing noted that Plaintiff's anxiety symptoms could have been in response to her sobriety. Tr. 185-87.

A Psychiatric Review Technique was completed by Gary E. Calhoun, Ph.D. on July 20, 2009. Plaintiff was diagnosed with the medically determinable impairment of anxiety; rule out general anxiety disorder; panic disorder without agoraphobia, or anxiety disorder. It was noted that Plaintiff had a history of polysubstance abuse in reported remission. Dr. Calhoun found a mild limitation regarding Plaintiff's activities of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Calhoun found no significant limitations in Plaintiff's abilities to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal

hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently of others. Dr. Calhoun found moderate limitations in Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. Tr. 189-206.

Plaintiff was seen at Mary Black Healthcare on August 16, 2008 for a laceration. Plaintiff reported that she was cut by a piece of cut glass. She received eight sutures and Lortab 5 mg.. Tr. 249-53. Plaintiff presented to Mary Black Healthcare on August 25, 2009, for suture removal. Tr. 246-48.

Plaintiff presented to Mary Black Healthcare on September 11, 2009, complaining of a leg injury. Plaintiff reported that she was climbing through a window and twisted her leg. She was diagnosed with a ligamentous sprain of the left knee and prescribed Anaprox DS 550 mg and Cyclobenzaprine 10 mg. Tr. 242-45.

Plaintiff presented to the Spartanburg Regional Healthcare System on October 19, 2009, complaining of lower back pain. She exhibited no apparent motor or sensory deficits. Her mood was flat. She exhibited full range of motion. She reported pain at 30 degrees upon straight leg raising of both the right and left leg. She was diagnosed with chronic low back paid. Tr. 213-15.

Plaintiff presented to Mary Black Healthcare on November 7, 2009, complaining of low back pain. She reported that she had been prescribed medication at Spartanburg Regional Healthcare Center, but that she needed something stronger. Tr. 242.

Plaintiff present to Mark Black Healthcare on November 8, 2009 complaining of lower back pain. An examination noted no cervical spine tenderness to palpation, no palpable cervical adenopathy, trapezius muscle pain. There was mild tenderness to palpation of the paralumbar spine.

Plaintiff's range of motion was normal. Her gait was normal. She was prescribed Ultram 50 mg and Norflex for acute lumbar myofascial strain and discharged home. Tr. 237-41.

Plaintiff presented to Mary Black Healthcare on December 3, 2009, with an acute, non-specific headache. She demonstrated normal behavior appropriate for age and situation. Plaintiff reported having adequate support systems available, was able to ambulate independently, and could perform all activities of daily living without assistance. Her gait was normal. Plaintiff was provided Toradol and discharged home. Tr. 232-36.

Plaintiff underwent a mental examination by Dr. Ruffing on December 28, 2009 and January 13, 2010. Dr. Ruffing determined that Plaintiff could function satisfactorily for sixty percent of an eight-hour work day as to following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, functioning independently, and maintaining concentration. He determined that she could function satisfactorily for forty percent of an eight-hour work day as to dealing with ordinary work stresses. Dr. Ruffing found that Plaintiff could function forty percent of an eight-hour work day as to understanding, remembering, and carrying out complex job instructions; sixty percent of an eight-hour work day as to understanding, remembering, and carrying out detailed, but not complex, job instructions; and eighty percent of an eight-hour work day as to understanding, remembering, and carrying out simple job instructions. He determined that Plaintiff could function eighty percent of an eight-hour work day with respect to maintaining her personal appearance; sixty percent of an eight-hour work day with respect to behaving in an emotionally stable manner; sixty percent of an eight-hour work day with respect to relating predictably in social situations; and forty percent of an eight-hour work day in demonstrating reliability. Dr. Ruffing noted that Plaintiff's ability to relate predicably in social situations and demonstrate reliability were

affected by her limited intellect. Tr. 213-18.

Dr. Ruffing also prepared a psychological evaluation of Plaintiff on December 18, 2009 and January 13, 2010. Dr. Ruffing rated Plaintiff as having a verbal IQ of 64, a performance IQ of 62, and a full scale IQ of 60. Plaintiff reported that she had been gainfully employed until three years previously when she moved. Plaintiff stated that she was unable to work because of transportation difficulties. Plaintiff complained of problems with her back and nerves, stating that she got nervous and depressed since she quit her job. Plaintiff reported being able to care for her personal needs. She could drive but gets too nervous to drive at times. She stated that she attended church services once or twice a week. Plaintiff reported that she was able to go to the store for herself and use cash to pay for items. She relied on her boyfriend to pay bills. Plaintiff reported having friends to socialize with and was able to utilize a telephone. Plaintiff reported eating what her boyfriend ate when they went out to a restaurant. Plaintiff stated she participated in meal preparation, household cleaning, and laundry. Plaintiff demonstrated a fairly stable mood and affect though she complained of feeling depressed because of an automobile accident. Plaintiff reported that she will feel sad, worthless, hopeless, helpless, and useless. She stated that she had the motivation to do things, but was physically limited and tended to get nervous. Dr. Ruffing's psychological impressions were mild mental retardation, borderline functional illiteracy, alcohol and substance abuse with stated remission. Dr. Ruffing opined that Plaintiff would have difficulty with emotional stability given her history of anxiety. Dr. Ruffing stated that Plaintiff would likely struggle to manage the concentration, persistence, and pace required in a typical work environment. Tr. 219-25.

Plaintiff was examined by Glenn L. Scott, M.D. on January 15, 2010. Dr. Scott noted that Plaintiff ambulated independently, although she seemed slightly unsteady in her gait and also as she

sat or stood. Dr. Scott noted that Plaintiff at times seemed to have difficulty concentrating and fairly answering questions. She showed tenderness to palpation over the base of the occiput and over the posterior aspect of the cervical spine and spinous processes. There was no sustained spasm. There was moderate decreased range of motion in lateral bending. Forward flexion was essentially full with extension to neutral and then with pain beyond that. Plaintiff had some enlargement of the small joints of both hands but had full closing motion. Dr. Scott noted that the thoracic spine examination showed a moderate kyposis without point tenderness of spasm. The lumbar spine examination showed decreased range of motion with increased pain as Plaintiff extended from flexion and with hyperextension. Lateral bending produced pain. Plaintiff exhibited mild scoliotic deformity with some tightness in the left paravertebral muscles. Dr. Scott observed that x-rays of the cervical spine demonstrated good overall alignment with good maintenance of the disc spaces. There was facet arthritis in the cervical area, particularly in the C5-6, C6-7 region. There was no significant foraminal encroachment present. X-rays of the lumber spine showed multilevel spondylitic changes, disc space narrowing at L2-3 and L5-S1 and to a lesser degree L4-5. Facet arthritis with hypertrophy of the facet joints was noted at L4-5 and L5-S1. Plaintiff also exhibited transitional vertebra at L5-S1 and mild scoliosis. Dr. Scott's impressions were: (1) degenerative lumbar spine and disc disease–probable spinal stenosis; (2) cervical spondylosis primarily with facet arthritis; (3) early osteoarthritis of small joints both hands; (4) generalized deconditioning. Dr. Scott opined that Plaintiff would be limited to sedentary type workplace activity involving mostly sitting with ambulation and particularly with limited climbing or exposure to heights or moving machinery. Dr. Scott stated that Plaintiff would have difficulty with bending or twisting of either the cervical or lumbar spine. Dr. Scott further felt that Plaintiff would have difficulty sustaining activities

because of her apparent, rather marked, deconditioning. Tr. 227-28.

On January 15, 2010, Dr. Scott also completed a form in which he concluded that Plaintiff could lift no more than ten pounds at a time and occasional lift or carry articles like docket files, ledgers, and small tools; that during an eight-hour work day she could use her hands for simple grasping fifty percent of the time (right) and sixty percent of the time (left); use her hands for fine manipulation twenty percent of the time; push and pull arm controls forty percent of the time; work with her hands above a table, reaching forward, thirty percent of the time; use her hands for writing or keyboard twenty percent of the time. He also determined that Plaintiff could stand or walk no more than about two hours, sitting approximately six hours of an eight-hour work day, and rest away from the work station two hours. Dr. Scott opined that during an eight-hour work day Plaintiff could push and pull leg and foot controls twenty percent of the time; that she could not bend or stoop; and could balance twenty percent of the time. He opined that Plaintiff had a severe limitation with respect to unprotected heights and/or dangerous machinery; moderate limitation as to exposure to marked changes in temperature and humidity, and mild limitation as to exposure to dust and fumes. Dr. Scott stated that he believed Plaintiff's complaints of pain and that there were laboratory or clinical findings documenting a condition that could reasonably be expected to give rise to the degree of pain complained of. According to Dr. Scott, emotional distress contributed to the pain experienced, and the pain produced or increased Plaintiff's emotional distress. Dr. Scott opined that the severity of the pain would limit Plaintiff fifty percent of the time as to abstract but not concrete instructions and tasks; eighty percent of the time as to performing all but one- and two-step tasks; twenty percent of the time as to attention to work tasks; and twenty percent of the time would require assistance. Dr. Scott noted that increased activities either at work or home would cause more pain.

Tr. 229-30.

Debra Mills, Plaintiff's sister-in-law, provided a letter dated January 24, 2010 in which she stated that she had been Plaintiff's supervisor for two or three years when they had worked for a cleaning service. Ms. Mills stated that someone always had to help Plaintiff because (1) she could not pick up heavy things by herself; (2) she did not like being on the elevator by herself; (3) she needed help with simple directions. Ms. Mills stated that Plaintiff would ask about directions that had already been explained to her. Ms Mills did not discipline Plaintiff because Plaintiff always was on time, tried her best, had a good attitude, and never caused problems. Ms. Mills stated that Plaintiff "never did pick it up to the point where she could just do things on her own. I would say that the fact that she was related to me, I was fond of her, and I felt sorry for her was about 80% of the reason why I employed her." Tr. 165.

B.     The ALJ Hearing Testimony

Plaintiff testified that she obtained a ninth grade education and had a history of substance abuse relating to alcohol and crack cocaine. She had stopped using drugs and alcohol approximately two years previously. Plaintiff testified that she had been treated for anxiety at the emergency room because she had no family doctor. She reported that she had been trying to see a mental health professional but was unable to get treatment. She stated that her back hurt and she had been treated at the emergency room. Plaintiff stated that she had been prescribed medication but had not had surgery. She testified that she could not walk very far and that her pain was about a nine on a scale of ten, with ten being the most severe. Plaintiff testified that she was weak and could not lift very much, maybe ten pounds. Plaintiff stated that she could not sit very long because she got restless. According to Plaintiff the pain in her back sometimes would start in her neck and go to her low back

and radiate into her legs. Tr. 28-34.

Dr. Carey Washington testified as a vocational expert. He described Plaintiff's past work history as a janitor as a heavier work activity with a specific vocational preparation of two. He noted that she had worked in a nursing home as a maid. Dr. Washington described this as medium work with a specific vocational preparation of two. In response to the ALJ's hypothetical, Dr. Washington opined that Plaintiff could do the work as a maid with lighter housekeeping jobs, restricted to simple, routine, and repetitive tasks and with only occasional public contact. When the hypothetical was further restricted to a sit/stand option, Dr. Washington opined that Plaintiff could do the job of linen grader, which is light, unskilled work activity in the laundry area; and the job of marker, which is light, unskilled work activity. The ALJ changed the hypothetical to sedentary work activity with simple, routine, and repetitive tasks and only occasional public contact. Dr. Washington testified that Plaintiff would do the job of a surveillance systems monitor and weight tester. Dr. Washington opined that Plaintiff could perform the surveillance systems monitor and weight tester jobs if a sit/stand option were included in the hypothetical. Dr. Washington further testified that if Plaintiff anxiety and depression caused her to be off task up to two hours per day, the stated jobs would be precluded. He also stated that the work activities also would be precluded if Plaintiff were to take three days off per month as the result of back pain or psychologically-based symptoms. Tr. 36-40.

C.     The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; cervical spondylosis primarily with face arthritis; history of polysubstance abuse in stated remission; depression; and anxiety. Tr. 14. The ALJ noted that Plaintiff had sought no regular treatment for her back pain, and that her emergency room records reveal benign physical

findings. The ALJ found that, mentally, Plaintiff had functioned well enough to forego any regular mental health treatment. The ALJ found "curious and disturbing" the disparity between the two consultative evaluations performed by Dr. Ruffing. The ALJ found the second examination that assessed Plaintiff to be mildly mentally retarded to be inconsistent with Plaintiff's adaptive functioning, which includes the ability to cook, clean, and care for herself.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties as to concentration, persistence of pace. The ALJ found Plaintiff to have the residual functional capacity to perform light work. Specifically, the ALJ concluded that Plaintiff possesses the capacity to lift twenty pounds occasionally and ten pounds frequently; sit about six hours in an eight-hour work day; stand about six hours in an eight-hour work day, and walk about six hours in an eight-hour work day. The ALJ found that Plaintiff requires a sit-stand option and is limited to simple, routine, and repetitive tasks and occasional public contact. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms: (1) back pain that limits her walking, (2) bad nerves that limit her ability to focus, (3) cognitive deficits that result in trouble keeping up with a regular work pace and learning; and (4) anxiety that limits her ability to be around people. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.

The ALJ accorded some weight to the findings of Dr. Scott, but did not adopt his finding of

"sedentary work." The ALJ noted the lack of a longitudinal record to support Plaintiff's allegations of disabling back pain, her failure to seek treatment for chronic back pain, and a medical record inconsistent with serious spinal compromise. The ALJ also reviewed the disparate opinions of Dr. Ruffing but did not give controlling weight to either of these opinions from the same psychological source. The ALJ found no evidence in the record to support an inability to perform simple tasks. The ALJ also looked at Plaintiff's independence in performing her activities of daily living, among other things, in discounting Dr. Ruffing's second opinion. The ALJ also noted that Plaintiff lacked full credibility and had a spotty work record.

The ALJ determined that Plaintiff could not perform past relevant work as a janitor. Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The ALJ also found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Therefore, the ALJ concluded that Plaintiff is not disabled under the Act. Tr. 12-23.

D.      The Report and Recommendation

Plaintiff asserted that the ALJ erred by failing to give adequate weight to the opinions of Dr. Scott and Dr. Ruffing; failing to comment on the lay testimony of Plaintiff's sister-in law and former supervisor; and failed to resolve a conflict caused by the sit/stand option and a conflict regarding the reasoning levels in the jobs cited by the Vocational Expert.

As to Dr. Scott, Plaintiff argued that, because no physician contradicted Dr. Scott's opinion that Plaintiff is limited to sedentary work, the ALJ erred in rejecting Dr. Scott's opinion. The

Magistrate Judge noted that the ALJ assessed Plaintiff's residual function capacity based on Dr. Scott's consultative examination, including x-rays of Plaintiff's spine. The Magistrate Judge noted that the ALJ provided detailed reasons as to why he did not adopt Dr. Scott's findings. Accordingly, the Magistrate Judge found that the ALJ appropriately considered and discounted Dr. Scott's opinion.

As to Dr. Ruffing, Plaintiff contended that the ALJ failed to provide sufficient rationale to support his assessment of Dr. Ruffing's opinions. The Magistrate Judge observed that Dr. Ruffing produced two conflicting opinions within a six month period, and there was no evidence of a reason for the purported mental decline between the first and second examinations. The Magistrate Judge noted that the ALJ gave some weight to both opinions by limiting Plaintiff to simple, routine, and repetitive tasks based on her severe anxiety and nonsevere borderline intellectual function. The Magistrate Judge observed that the ALJ had the benefit of two assessments by Dr. Calhoun regarding Plaintiff's mental limitations. The Magistrate Judge determined that the ALJ properly considered and discounted Dr. Ruffing's opinions.

Regarding the lay testimony of Plaintiff's sister-in-law, Ms. Mills, Plaintiff asserted that the ALJ failed to comment on the testimony, which Plaintiff contends corroborates Dr. Ruffing's assessment. The Magistrate Judge observed that the ALJ referred to Ms. Mills' statement three times in his decision: (1) as support for his finding that Plaintiff had moderate difficulties in social functioning, (2) in determining Plaintiff's residual function capacity; and (3) with respect to Plaintiff's intellectual deficits. The Magistrate Judge concluded that the ALJ appropriately considered the lay testimony of Plaintiff's sister-in-law.

As to conflicts in the Vocational Expert's testimony, Plaintiff argued that the ALJ's failure

to consult with Dr. Washington about the sit/stand option on the occupational base created a potential conflict between Dr. Washington's opinion and the Dictionary of Occupational Titles (DOT). The Magistrate Judge determined that, because the DOT does not address the availability of a sit/stand option, the DOT is not irreconcilable with Dr. Washington's testimony. Accordingly, the Magistrate Judge found that the ALJ did not err in relying on Dr. Washington's opinion that Plaintiff could perform certain jobs with a sit/stand option even though the DOT does not provide for such an option.

Plaintiff also asserted that the ALJ failed to resolve conflicts between Plaintiff's residual functional capacity and the reasoning level in the jobs identified by the Vocational Expert, which require a reasoning level of two. According to Plaintiff, the ALJ's limitation of Plaintiff to simple, routine, and repetitive tasks and to occasional public contact corresponds to a reasoning level of one. The Magistrate Judge observed that level one correlates to the most elementary occupations in which only the slightest bit of rote reasoning is required. The Magistrate Judge found that there was no conflict, and that there was no evidence to suggest that Plaintiff is incapable of performing only at a reasoning level of two.

In conclusion, the Magistrate Judge found that the Commission performed an adequate review of the whole record, including evidence regarding Plaintiff's mental and physical conditions, and that the decision is supported by substantial evidence. The Magistrate Judge recommended that the decision of the Commissioner be affirmed.

E.      <u>Plaintiff's Objections to the Report and Recommendation</u>

Plaintiff first objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's conclusion that Dr. Scott's opinion was not entitled to controlling weight. Plaintiff asserts

that the ALJ used generalities rather than specific reasons to explain why he assigned only some weight to Dr. Scott's opinion. Plaintiff also contends that the ALJ impermissibly discounted Dr. Scott's opinion because Plaintiff had not had regular, continuing psychiatric treatment, including medication, when in fact she had been unable to obtain free or reduced treatment. Plaintiff further argues that the record supports Dr. Scott's assessment because the record demonstrates she at least had intermittent lost range of motion that was disabling.

"An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *see Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir.1992), or has not given good reason for the weight afforded a particular opinion. *See* 20 C.F.R. § 404.1527(d) (1998)." *Koonce v. Apfel*, 166 F.3d 1209, *2 (4th Cir. 1999). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2).

In this case, the ALJ found as follows:

In terms of the claimant's alleged back pain, I have provided the above physical limitations. I assessed the claimant light work with a sit-stand option based on Dr. Scott's consultative examination. The claimant's x-rays showed degenerative disc disease of the spine, which provides objective evidence that partially supports the claimant's allegations. However, there is no longitudinal record to support the claimant's allegations of disabling back pain. She has sought only acute treatment for her back pain, with generally unremarkable findings. While Dr. Scott observed an unsteady gait and decreased range of motion of the lumbar spine, the claimant's overall clinical picture is inconsistent with serious spinal compromise. When the

> claimant reported low back pain during a November 2009 emergency room visit, range of motion of the neck and back were normal. The claimant indicated that she is prescribed Tramadol for pain, but this prescription is from an emergency room physician, and there are no records of regular primary care from which she would receive regular prescription pain medicine. I further note that the claimant functioned well enough physically to attempt to climb through a window. Overall, the lack of a consistent longitudinal record and the inconsistent physical findings do not support the claimant's allegations that she cannot lift over ten pounds and that she can walk only for short periods.

Tr. 20 (internal citations omitted).

In the court's view, the ALJ properly considered the factors set forth in 20 C.F.R. § 404.1527(c)(2). The ALJ noted a single examination by Dr. Scott that partially was supported in the record but inconsistent with the record as a whole. Moreover, the ALJ was not obliged to adopt Dr. Scott's legal opinion that Plaintiff was limited to sedentary work. *See* 20 C.F.R. § 404.1527(d). Plaintiff's objection is without merit.

Plaintiff next argues that the Magistrate Judge erred in concluding that the ALJ properly discounted the letter of Plaintiff's sister-in-law. According to Plaintiff, Ms. Mills' letter demonstrates that Plaintiff was incapable of work, and the letter should not have been disregarded absent explicit credibility determinations.

In *Smith v. Heckler*, 735 F.2d 312 (8th Cir. 1984), the Court of Appeals concluded that an ALJ erred in making only passing reference to testimony of the aunt and mother of the claimant. The Court of Appeals held that, if the testimony is to be rejected, the ALJ must specifically discuss the testimony and express credibility determinations. Unlike the within action, *Smith* involved live testimony upon which the ALJ could make a credibility determination. In the court's view, the ALJ properly considered the unsworn statement given by Ms. Mills in conjunction with the record as a whole to reach the conclusion that Plaintiff suffers some limitations, but is not disabled as

contemplated by the Act.

Plaintiff's objections are without merit.

## IV.  CONCLUSION

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated herein and in the Report and Recommendation, the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Court

Columbia, South Carolina

September 27, 2012.